Geoffrey J. McConnell ISB #4807
Chad M. Nicholson ISB #7506
McCONNELL WAGNER SYKES & STACEY PLLC
827 East Park Boulevard, Suite 201
Boise, Idaho 83712
Telephone: 208.489.0100
Facsimile: 208.489.0110
mcconnell@mwsslawyers.com
nicholson@mwsslawyers.com
I:\10550.002\PLD\8.11.15 - Complaint (Final).docx

Attorneys for Plaintiff Kelley Tuttle

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLEY TUTTLE, an individual<br><br>  Plaintiff,<br><br>v.<br><br>TREASURE VALLEY MARINE, INC., an Idaho corporation, BOHNENKAMPS WHITEWATER CUSTOMS, INC., an Idaho corporation, NIAGARA JET ADVENTURES, LLC, a New York limited liability company, CHRISTOPHER and RACHEL BOHNENKAMP, married individuals; KEYBANK NATIONAL ASSOCIATION, a national banking association with its principal place of business in Ohio, d/b/a KeyBank.<br><br>  Defendants. | CASE NO. 1:15-cv-314<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

**COMES NOW** Plaintiff Kelley Tuttle, by and through his counsel of record, Chad M. Nicholson of McConnell Wagner Sykes & Stacey, PLLC, and for a cause of action against Defendants Treasure Valley Marine, Inc., an Idaho corporation, Bohnenkamps Whitewater Customs, Inc., an Idaho corporation, Niagara Jet Adventures, LLC, a New York limited liability company, Christopher and Rachel Bohnenkamp, married individuals; and KeyBank National Association, d/b/a KeyBank, complains and alleges as follows:

## I.   PARTIES

1. Plaintiff Kelley Tuttle ("Plaintiff") is an individual who currently resides in Ely, Nevada.

2. Defendant Treasure Valley Marine, Inc. ("TVM"), is a corporation organized under the laws of the State of Idaho whose principal place of business is in Boise, Ada County, Idaho.

3. Bohnenkamps Whitewater Customs, Inc. ("BWC") is a corporation organized under the laws of the State of Idaho whose principal place of business is in Boise, Ada County, Idaho.

4. Niagara Jet Adventures, LLC ("NJA"), is a limited liability company organized under the laws of the State of New York whose principal place of business is Niagara Falls, New York.

5. Christopher and Rachel Bohnenkamp (collectively "the Bohnenkamps") are married individuals who, upon information and belief, reside in Ada County, Idaho.

6. At all times relevant hereto, Christopher Bohnenkamp ("Christopher") was and is an officer of TVM and BWC and a member of NJA.

7. KeyBank National Association ("KBNA") is a national banking association organized under the laws of the United States with its principal place of business in Cleveland, Ohio, doing business as KeyBank.

## II. JURISDICTION AND VENUE

8. This Court has original jurisdiction over the Plaintiff's causes of action that arise under the laws of the United States ("Federal Law Claims") under 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's causes of action arising under the laws of the State of Idaho ("State Law Claims") under 28 U.S.C. § 1367(a) since such State Law Claims are so related to the Federal Law Claims that they form part of the same case or controversy.

10. Venue is proper in this district under 28 U.S.C. § 1391 as a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

## III. GENERAL ALLEGATIONS

11. On or about July 8, 2013 a former customer of TVM/BWC ("Former Customer") entered into a contract entitled Bill of Sale ("Former Customer Bill of Sale") with TVM for the fabrication and sale of a 2014 BWC 26' Gatlin boat, 2014 2066L Trailer and 2014 Marine Power 6.0L LS3 motors (collectively referred to as the "Former Customer Boat/Trailer").

12. The Former Customer traded in a 2011 24' Custom Weld White Water Special as a down payment on the Former Customer Boat/Trailer.

13. At the time the Former Customer entered into the Former Customer Bill of Sale, Christopher, TVM and/or BWC represented that the Former Customer Boat/Trailer would be completed in six (6) to eight (8) months.

14. Prior to entering the Bill of Sale, the Former Customer had arranged financing for the purchase through a credit union located in Kentucky.

15. At the direction of Christopher, the Former Customer contacted and ultimately obtained financing for the Former Customer Boat/Trailer from KBNA. KBNA approved a loan to the Former Customer in the amount of $114,692.00 which was to be secured by the Former Customer Boat/Trailer ("Former Customer Loan").

16. The Former Customer Loan funded on or about July 11, 2013. At the time of funding, KBNA was aware that the Former Customer Boat/Trailer had not been fabricated but distributed the entire Former Customer Loan proceeds to TVM and/or BWC.

17. The Former Customer Boat/Trailer was ultimately delivered to the Former Customer on or about November 21, 2014. However, the boat that was delivered was not that contracted for by the Former Customer.

18. Between July 8, 2013 and November 21, 2014, Christopher, TMV, and BWC, on numerous occasions, communicated with the Former Customer by telephone, e-mail, and text messages regarding the Former Customer Boat/Trailer and the Former Customer Loan.

19. Between July 8, 2013 and November 21, 2014, KBNA communicated on numerous occasions with the Former Customer via telephone, e-mail and the United States Postal Service about the Former Customer Boat/Trailer and the Former Customer Loan.

20. After July 8, 2013 and on or before April 3, 2014, the Former Customer advised KBNA that it had not yet received a title for the Former Customer Boat/Trailer and that the Former Customer Boat/Trailer had not yet been delivered.

21. In or about January of 2014, Tuttle contacted BWC and TVM about buying a custom boat to be fabricated by BWC.

22. On or about February 5, 2014 Tuttle entered into a contract entitled Bill of Sale ("Tuttle Bill of Sale") with TVM for the fabrication and sale of a 2014 BWC '24 Weapon and trailer ("Tuttle Boat/Trailer"). Tuttle traded in his 2013 Thunder Jet Alexis boat ("Thunder Jet") as the down payment on the Tuttle Boat/Trailer.

23. The Tuttle Boat/Trailer was to be fabricated and delivered to Tuttle by July of 2014.

24. To date, the Tuttle Boat/Trailer has not been completely fabricated or delivered.

25. At the direction of Christopher, on or about February 5, 2014, Tuttle obtained financing for the Tuttle Boat/Trailer from KBNA. On or about February 11, 2014, KBNA approved a loan to Tuttle in the amount of $147,241.00 which was to be secured by the Tuttle Boat/Trailer ("Tuttle Loan").

26. After applying for the Tuttle Loan, Tuttle traveled to North Dakota. While in North Dakota, Tuttle received loan documentation via the United States Postal Service. An employee of TVM and/or BWC then requested that Tuttle sign and fax back to TVM and/or BWC a power of attorney, which Tuttle did.

27. At the time of the Tuttle Loan, KBNA was aware that the 2014 Boat/Trailer had not been fabricated but distributed the entire Tuttle Loan proceeds to TVM and/or BWC.

28. Between January, 2014 and the present, Christopher, TVM, and BWC, on numerous occasions, communicated with Tuttle by telephone, text messages, and United States Postal Service about the Tuttle Boat/Trailer and the Tuttle Loan.

29. Between January, 2014 and the present, KBNA has communicated on numerous occasions with Tuttle via telephone and the United States Postal Service about the Tuttle Boat/Trailer and the Tuttle Loan.

30. Upon information and belief, prior to July of 2013, KBNA reached an agreement ("Agreement") with Christopher, TVM, and BWC, regarding the referral of customers to KBNA for financing boats and trailers and each of them to be fabricated by Christopher, TVM, and/or BWC.

31. Upon information and belief, under the Agreement, Christopher, TVM and BWC would direct his/its/their customers to KBNA for financing for boats and trailers to be fabricated by BWC and sold by TVM.  KBNA would then approve loans that were (purportedly) secured by boats and/or trailers which had not yet been built.  In addition to the loan proceeds being sent to TVM and/or BWC prior to the boat/trailer completion, Christopher, TVM and/or BWC would receive a "kickback" payment for each customer sent to KBNA.

32. Upon receiving loan proceeds from KBNA, TVM and/or BWC would use the money for purposes other than fabricating the boat and trailer for the individual who had obtained the loan.

33. Upon information and belief, prior to Tuttle's February, 2014 purchase, Christopher, TVM and/or BWC had referred multiple customers under the Agreement to KBNA who processed loans ("Prior Loans") for such customers.

34. KBNA was aware that the boats which were to secure the individual Prior Loans were custom build boats that had not been fabricated at the time of the loan.  KBNA distributed all of the Prior Loan proceeds to Christopher, TVM and/or BWC notwithstanding the fact that no specific boat or trailer was being fabricated with the Prior Loan proceeds,.

35. On information and belief, after receiving the loan proceeds from KBNA, Christopher transferred part of all of the proceeds from TVM and/or BWC to himself personally

and then invested/transferred such proceeds from his personal account into his new enterprise NJA or used such proceeds to start/obtain an interest in NJA.

## FIRST CAUSE OF ACTION
### (TUTTLE'S CLAIM OF BREACH OF CONTRACT AGAINST TVM)

36. Tuttle repeats and realleges herein by this reference each and every allegation set forth in Paragraphs 1 through 35, inclusive, as if said paragraphs were set forth hereat in full.

37. Tuttle entered into valid and binding contract with TVM for the fabrication and delivery of the 2014 Boat/Trailer by June, 2014.

38. Tuttle performed any and all obligations he had under such contract, including but not limited to payment of the full purchase price.

39. TVM failed to fabricate and deliver the Tuttle Boat/Trailer by June, 2014.

40. TVM's failure to fabricate and deliver by June, 2014, the Tuttle Boat/Trailer constitutes a material breach of the contract.

41. As a direct and proximate result of TVM's breach of contract, Tuttle has been damaged in an amount to be proven at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

42. Tuttle has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia*, Idaho Code §§ 12-120 and 12-121, and Rule 54 of the Federal Rules of Civil Procedure.

## SECOND CAUSE OF ACTION
### (TUTTLE'S CLAIM FOR BREACH OF THE IDAHO CONSUMER PROTECTION ACT)

43. Tuttle repeats and realleges herein by this reference each and every allegation set forth in Paragraphs 1 through 42, inclusive, as if said paragraphs were set forth herein in full.

44. The Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.* prohibits the making of misleading, false or deceptive statements to consumers.

45. Tuttle is a consumer as that term is used within the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*

46. Christopher, as agent of TVM and BWC, represented to Tuttle that TVM and BWC could fabricate and deliver the Tuttle Boat/Trailer knowing that neither TVM and/or BWC had the ability to fabricate and deliver the Tuttle Boat/Trailer.

47. The representation(s) that TVM and/or BWC could fabricate and deliver the 2014 Boat/Trailer were misleading, false and/or deceptive and constituted a violation of the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq*.

48. As a direct and proximate result of TVM's and BWC's misleading, false and/or deceptive representations, Tuttle has been damaged in an amount to be proven at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

49. Tuttle has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia*, Idaho Code §§ 12-120, 12-121, and 48-608 and Rule 54 of the Federal Rules of Civil Procedure.

50. Tuttle reserves this paragraph for a claim of punitive damages pursuant to Idaho Code § 48-608.

### THIRD CAUSE OF ACTION
### (TUTTLE'S CLAIM FOR FRAUD)

51. Tuttle repeats and realleges herein by this reference each and every allegation set forth in Paragraphs 1 through 50, inclusive, as if said paragraphs were set forth hereat in full.

52. Christopher, as agent of TVM and BWC, represented to Tuttle that TVM and BWC could fabricate and deliver the Tuttle Boat/Trailer knowing that neither TVM and/or BWC had the ability to construct and deliver the Tuttle Boat/Trailer.  Additionally, Christopher, as agent of TVM, impliedly represented that the proceeds of the Tuttle Loan would be paid to BWC to fabricate the Tuttle Boat/Trailer knowing that the proceeds of the Tuttle Loan would not be paid to BWC and/or that BWC would not use the proceeds to fabricate the Tuttle Boat/Trailer.

53. Christopher, TVM and BWC knew that the representations that TVM and/or BWC could fabricate and deliver the Tuttle Boat/Trailer were false.

54. Christopher, TVM and BWC intended that Tuttle rely on these representations.

55. Tuttle was not aware that the representations were false and reasonably relied on these material representations.

56. As a direct and proximate result of Christopher's, TVM's, and BWC's fraudulent representations, Tuttle has been damaged in an amount to be proven at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

57. Tuttle has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia*, Idaho Code §§ 12-120 and 12-121 and Rule 54 of the Federal Rules of Civil Procedure.

### FOURTH CAUSE OF ACTION
(TUTTLE'S CLAIM OF CONSPIRACY)

58. Tuttle repeats and realleges each and every allegation set forth in Paragraphs 1 through 57 inclusive, as though fully set forth hereat in full.

59. Christopher, TVM, BWC and KBNA conspired to mislead and deceive Tuttle in violation of the Idaho Consumer Protection Act and to defraud Tuttle by virtue of arranging a

loan to Tuttle that was unsecured and the proceeds of which were used for purposes other than the Tuttle Boat/Trailer which was to secure the Tuttle Loan.

60. As a direct and proximate result of such conspiracy, Tuttle has been damaged in an amount to be proven at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

61. Tuttle has been required to retain the services of an attorney to bring this suit and are entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia*, Idaho Code §§ 12-120 and 12-121, and Rule 54 of the Federal Rules of Civil Procedure.

### FIFTH CAUSE OF ACTION
### (TUTTLE'S CLAIM FOR AIDING AND ABETTING BREACH OF THE IDAHO CONSUMER PROTECTION ACT AND FRAUD)

62. Tuttle repeats and realleges each and every allegation set forth in Paragraphs 1 through 61 inclusive, as though fully set forth hereat.

63. The Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq*. prohibits the making of misleading, false or deceptive statements to consumers.

64. Tuttle is a consumer as that term is used within the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*

65. TVM and BWC, through their agent Christopher, made misleading, false and deceptive statements to Tuttle.

66. TVM and BWC, through their agent Christopher, made fraudulent representations to Tuttle regarding TVM and BWC's ability to fabricate the Tuttle Boat/Trailer.

67. KBNA aided and abetted TVM and BWC's misleading, deception and defrauding of Tuttle by facilitating the Tuttle Loan with Tuttle and providing the proceeds from the Tuttle Loan to TVM and/or BWC.

68. As a direct and proximate result of KBNA's aiding and abetting TVM and BWC's misleading, deception and defrauding of Tuttle, Tuttle has been damaged in an amount to be proven at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

69. Tuttle has been required to retain the services of an attorney to bring this suit and are entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia*, Idaho Code §§ 12-120 and 12-121, and Rule 54 of the Federal Rules of Civil Procedure.

### SIXTH CAUSE OF ACTION
(TUTTLE'S CLAIM FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, *ET SEQ.* AND THE RACKETEERING ACT, IDAHO CODE § 18-7801, *ET SEQ.*)

70. Tuttle repeats and realleges each and every allegation set forth in Paragraphs 1 through 69, inclusive, as though fully set forth hereat.

71. Tuttle is an individual capable of holding a legal or beneficial interest in property.

72. Christopher, TVM, BWC, NJA and KBNA are individuals or entities that are capable of holding a legal or beneficial interest in property.

73. Christopher, TVM, BWC, NJA and KBNA associated with each other for the purpose of defrauding individuals and/or entities who sought to purchase a boat and/or trailer from TVM and/or BWC by providing loans to customers of TVM or BWC which loans purportedly secured by boats and/or trailers which TVM and/or BWC would not provide. As such, Christopher, TVM, BWC, NJA and KBNA collectively constitute an associated-in-fact enterprise as that term is used and defined in Chapter 96 of Title 18 of the United States Code. The association of Christopher, TVM, BWC, NJA and KBNA will be referred to as the "Enterprise."

74. The Enterprise engaged in and/or had some effect on interstate commerce in that TVM and/or BWC had customers within and outside of the State of Idaho, and Christopher, TVM, BWC, and KBNA used telephones, e-mails and the United States Postal Service to communicate with the Plaintiffs.

75. Christopher was employed by or associated with the Enterprise, and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity by:

    a. transmitting, or causing to be transmitted, by wire communications in interstate writings, signs, signals, pictures and/or sounds for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle and others similarly situated in violation of 18 U.S.C. 1343; and

    b. by knowingly making a false statement or report, or willfully overvaluing property and/or security for the purpose of influencing the action of KBNA, an institution the accounts of which are secured by the Federal Deposit Insurance Corporation, upon loan applications submitted to KBNA in violation of 18 U.S.C. §§ 1014 and/or 1344.

76. TVM was employed by or associated with the Enterprise, and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity by:

    a. transmitting, or causing to be transmitted, by wire communications in interstate writings, signs, signals, pictures and/or sounds for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle and others similarly situated in violation of 18 U.S.C. 1343; and

    b. by knowingly making a false statement or report, or willfully overvaluing property and/or security for the purpose of influencing the action of KBNA, an institution the

accounts of which are secured by the Federal Deposit Insurance Corporation, upon loan applications submitted to KBNA in violation of 18 U.S.C. §§ 1014 and/or 1344.

77. BWC was employed by or associated with the Enterprise, and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity by:

    a. transmitting, or causing to be transmitted, by wire communications in interstate writings, signs, signals, pictures and/or sounds for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle and others similarly situated in violation of 18 U.S.C. 1343; and

    b. by knowingly making a false statement or report, or willfully overvaluing property and/or security for the purpose of influencing the action of KBNA, an institution the accounts of which are secured by the Federal Deposit Insurance Corporation, upon loan applications submitted to KBNA in violation of 18 U.S.C. §§ 1014 and/or 1344.

78. NJA was employed by or associated with the Enterprise, and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity by:

    a. transmitting, or causing to be transmitted, by wire communications in interstate writings, signs, signals, pictures and/or sounds for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle and others similarly situated in violation of 18 U.S.C. 1343; and

    b. placing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the United States Postal Service, or depositing or causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or taking or receiving therefrom, any such matter or thing, and/or knowingly causing to be delivered by mail or such carrier according to the direction thereon, or at

the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle in violation of 18 U.S.C. § 1341.

79. KBNA was employed by or associated with the Enterprise, and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity by:

    a. placing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the United States Postal Service, or depositing or causing to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or taking or receiving therefrom, any such matter or thing, and/or knowingly causing to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle and others similarly situated in violation of 18 U.S.C. § 1341.

    b. transmitting, or causing to be transmitted, by wire communications in interstate writings, signs, signals, pictures and/or sounds for the purpose of executing the aforementioned scheme to mislead, deceive and defraud Tuttle and others similarly situated in violation of 18 U.S.C. 1343.

80. As a direct and proximate result of Christopher's, TVM's, BWC's, NJA's and KBNA's racketeering activity, Tuttle has been damaged in an amount to be determined with specificity at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

81. Tuttle has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to,

*inter alia*, Idaho Code §§ 18-7805, 18 U.S.C. § 1964 and Rule 54 of the Federal Rules of Civil Procedure.

### SEVENTH CAUSE OF ACTION
### (TUTTLE'S CLAIM FOR CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1961, *ET SEQ.* AND THE RACKETEERING ACT, IDAHO CODE § 18-7801, *ET SEQ.*)

82. Tuttle repeats and realleges each and every allegation set forth in Paragraphs 1 through 81 inclusive, as though fully set forth hereat.

83. Christopher, TVM, BWC, NJA, and KBNA agreed to accomplish an unlawful plan to engage in a pattern of racketeering activity for the purpose of to defrauding Tuttle by the aforementioned acts.

84. Christopher, TVM, BWC, NJA, and KBNA each engaged in actions to carry out the agreed upon unlawful plan.

85. As a direct and proximate result of Christopher's, TVM, BWC, NJA, and KBNA's conspiracy to engage in racketeering activity, Tuttle has been damaged in an amount to be determined with specificity at trial, but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00), plus interest thereon at the maximum rate allowed by law.

86. Tuttle has been required to retain the services of an attorney to bring this suit and is entitled to an award of reasonable attorneys' fees incurred in bringing this suit, pursuant to, *inter alia*, Idaho Code § 18-7805, 18 U.S.C. § 1964 and Rule 54 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Tuttle prays for the entry of judgment in favor of Tuttle against Defendants as follows:

a) For monetary damages in excess of One Hundred Thousand Dollars ($100,000.00) to be determined with specificity at trial;

b) For attorneys' fees and costs in the sum of not less than Five Thousand and No/100 Dollars ($5,000.00) if judgment is entered by default, and such further amounts as the Court may find reasonable if this matter is contested; and,

c) For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Tuttle hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all issues so triable.

DATED this 12th day of August, 2015.

                                                MCCONNELL, WAGNER, SYKES & STACEY, PLLC

                                                /s/
                                          By:   Chad M. Nicholson
                                                   Attorneys for Plaintiff Kelley Tuttle