UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLEY TUTTLE, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>BOHNENKAMPS WHITEWATER CUSTOMS, INC., an Idaho corporation; CHRISTOPHER and RACHEL BOHNENKAMP, married individuals; KEYBANK NATIONAL ASSOCIATION, a national banking association with its principal place of business in Ohio, d/b/a KeyBank,<br><br>    Defendants. | Case No. 1:15-cv-00314-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court are two motions to dismiss Plaintiff Kelley Tuttle's claims as filed in his Amended Complaint (Dkt. 25)—one from Defendant KeyBank National Association ("KeyBank") (Dkt. 28) and one from Defendants Treasure Valley Marine, Inc. ("TVM") Bohnenkamps Whitewater Customs, Inc. ("BWC"), Niagara Jet Adventures, LLC ("NJA"), and Christopher and Rachel Bohnenkamp collectively (Dkt. 29).

The Court finds that the decisional process would not be significantly aided by oral argument and will decide the motions on the briefs filed. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS

KeyBank's Motion to Dismiss. Further, the Court DENIES BWC, Christopher Bohnenkamp, and Rachel Bohnenkamp's Motion to Dismiss and ORDERS Tuttle to request for a clerk's entry of default judgment against the three aforementioned parties.

## II. BACKGROUND

Christopher Bohnenkamp is the president of two Idaho corporations—TVM and BWC—and is a member of NJA. Dkt. 25, ¶¶ 6, 11–12. Kelley Tuttle's Amended Complaint alleges that Christopher Bohnenkamp used TVM and BWC to receive and fill orders for custom-built boats and trailers. *Id.*, ¶¶ 11–12. On February 5, 2014, Tuttle alleges to have entered into an agreement to purchase a boat and trailer from TVM. *Id.*, ¶ 27. Under the agreement, TVM was to fabricate a custom jet boat for $147,241, which was to be financed by a loan from Defendant KeyBank for the full amount. *Id.*, ¶ 34. Tuttle alleges that KeyBank distributed the loan to TVM or BWC, but the custom-built boat was not delivered to Tuttle on the date agreed upon by Tuttle and TVM. *Id.*, ¶¶ 35, 37(c). Tuttle also claims, upon information and belief, that KeyBank had an agreement with Christopher Bohnenkamp, and his business entities TVM and BWC wherein KeyBank would pay Bohnenkamp a "kickback" when they referred individuals to KeyBank to finance custom boats. *Id.*, ¶ 38. Tuttle alleges that the loan distributed to TVM was not used to fabricate the financed boat, but instead was invested in Bohnenkamp's new enterprise, NJA. *Id.*, ¶ 43.

In 2015, Kelley Tuttle filed his original complaint with this Court, and the case was assigned to Judge B. Lynn Winmill. Dkt. 1. Defendant KeyBank, as well as Defendants TVM, BWC, NJA, and Christopher and Rachel Bohnenkamp collectively, filed motions to

MEMORANDUM DECISION AND ORDER - 2

dismiss all of Tuttle's claims against them. Dkts. 4, 7. Judge Winmill granted both of those motions. Dkt. 24. However, Judge Winmill also granted Tuttle leave to amend (*Id.*), and Tuttle filed his Amended Complaint in 2016 (Dkt. 25). Shortly thereafter, Defendants filed new motions to dismiss the Amended Complaint for failure to state a claim. Dkts. 28, 29.

Before the Court was able to issue a decision on the instant motions to dismiss, Christopher and Rachel Bohnenkamp were indicted, and Defendants TVM, BWC, NJA, and Christopher and Rachel Bohnenkamp filed a motion to stay the present case until the criminal proceedings were finished. Dkt. 39. Judge Winmill granted the motion to stay (Dkt. 49) and the case was later reassigned to the present Court (Dkt. 51). The Case continued to be stayed while bankruptcy proceedings were ongoing with some of the defendants. Dkt. 61.

In January 2023, the Court lifted the stay and permitted supplemental briefing to account for the seven-year gap since KeyBank's current Motion to Dismiss was filed in 2016. Dkt. 73. Only KeyBank filed a notice of supplemental authority. Dkt. 74. Tuttle filed a status report informing the Court that claims against TVM and NJA had been resolved through a settlement agreement during the bankruptcy proceedings (Dkt. 75), and the Court formally dismissed TVM and NJA from this lawsuit (Dkt. 76).

Defendant KeyBank and Defendants Christopher Bohnenkamp, Rachel Bohnenkamp, and Bohnenkamps Whitewater Customs, Inc. (collectively "Bohnenkamp") remain as parties to this suit. Dkt. 76. Defendants now seek to dismiss this suit through two separate motions to dismiss—one from KeyBank and one from Bohnenkamp.

### III. LEGAL STANDARDS

**A. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted."[1] "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements . . . ." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Iqbal*, 556 U.S. at 663.

---

[1] Many of these legal standards are incorporated from Judge Winmill's prior decision granting KeyBank's motion to dismiss. *See* Dkt. 24, at 3–4.

MEMORANDUM DECISION AND ORDER - 4

A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B. Fraud – Rule 9(b)

Where claims are grounded in fraud, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud." However, plaintiffs may allege generally "malice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). Further, Rule 9(b) demands:

> "[C]ircumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong. Allegations of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction."

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). Fraud can be alleged either directly, by specifically setting forth facts establishing fraud, or indirectly, by alleging facts that, if true, would necessarily constitute fraud even if the word 'fraud' is not used. *Id.* at 1124. Rule 9(b) serves three purposes:

> "(1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Id.* at 1125 (cleaned up). Additionally, where a claim is asserted against multiple defendants, the plaintiff must "inform each defendant separately of the allegations surrounding his participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65

(2007) (cleaned up). At a minimum, the plaintiff must "identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (cleaned up).

## IV. ANALYSIS

### A. KeyBank's Motion to Dismiss

KeyBank is seeking to dismiss three claims that Tuttle has raised against it: (1) conspiracy, (2) aiding and abetting breach of the Idaho Consumer Protection Act (ICPA) and fraud, and (3) violation of both state and federal racketeering laws ("RICO Acts"). Additionally, KeyBank argues that the Court should prohibit Tuttle from amending his complaint a second time. Dkt. 28-1, at 11.

The Court dismisses each of these claims and sets forth its reasoning by addressing each disputed claim in turn.

#### *1. Conspiracy*

The Court finds that Tuttle has failed to provide a sufficient factual basis to support his amended conspiracy claim against KeyBank. A civil conspiracy only exists "if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003).

KeyBank previously filed a motion to dismiss Tuttle's original conspiracy claim. Dkt. 4. Judge Winmill granted that prior motion because it found that "Tuttle ha[d] failed to plead sufficient facts to support his claim that there was an agreement between [Bohnenkamp] and KeyBank." Dkt. 24, at 7. In the present Motion, KeyBank argues that, despite any new factual basis provided by Tuttle, the amended conspiracy claim still lacks

the necessary specificity to support Tuttle's claim of fraud. Dkt. 28-1, at 5–6. The Court agrees.

Federal Rule of Civil Procedure 9(b) requires Tuttle to state the circumstances of the alleged fraud with particularity. However, "[a] party may allege on information and belief under circumstances in which the required facts are peculiarly within the defendant's knowledge or control, but, should [he] do so, the party must still state the factual basis for the belief." *Harvey v. Maximus Inc.*, 2014 WL 6474051, at *2 (D. Idaho Nov. 19, 2014) (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). As specific information about the existence of an agreement is likely within the defendant's knowledge or control, it is appropriate that Tuttle alleges the existence of the agreement upon information and belief so long as Tuttle provides a factual basis for his belief.

Here, Tuttle alleges upon information and belief that KeyBank and Bohnenkamp entered into an agreement where Bohnenkamp would refer customers to KeyBank to finance custom boats and trailers that he would build. Dkt. 25, ¶ 38. KeyBank would then approve the loans, and Bohnenkamp would receive a "kickback" payment from KeyBank for each referral. *Id.*

Tuttle's factual basis to support his allegation of an agreement is based on interactions Tuttle had with both KeyBank and Bohnenkamp. *See* Dkt. 25, ¶¶ 30–31, 70–71. Tuttle alleges that Christopher Bohnenkamp "directed Tuttle to seek financing with Nancy Van Winkle" —a KeyBank employee—at KeyBank's Nampa office. Dkt. 25, ¶ 30. Bohnenkamp also allegedly told Tuttle that he had "previously sent customers to [KeyBank] for loans and 'knew that it would work' . . . if Tuttle sought financing with Van

Winkle at [KeyBank]." *Id.* Additionally, Tuttle alleges that Van Winkle had informed him that KeyBank "work[s] with Chris all the [sic] time" and that KeyBank and Christopher Bohnenkamp "work hand in hand." *Id.*, ¶ 31. These allegations provide a sufficient factual basis to support Tuttle's belief of an agreement between KeyBank and Bohnenkamp.

However, a claim of civil conspiracy also requires that the agreement existed to complete "an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters*, 64 P.3d at 321. While Tuttle has sufficiently alleged the existence of an agreement to satisfy Rule 9(b), Tuttle has not provided any detailed allegations that suggest KeyBank and Bohnenkamp had an agreement to jointly mislead, deceive, or defraud Tuttle. Rather, Tuttle provides merely conclusory statements that because such an agreement exists, it must have been to violate the ICPA. *See* Dkt. 25, ¶ 71. This is a large inferential gap that Tuttle has failed to fill through particularized allegations sufficient to satisfy Rule 9(b).

Further, the Ninth Circuit has held that Rule 9(b) requires plaintiffs to provide facts "specific enough to give defendants notice" of the alleged misconduct so that they can defend against the charge rather than simply deny the allegations. *Kearns*, 567 F.3d at 1124–25 (cleaned up). While Tuttle's factual basis may support the establishment of a business referral relationship, Tuttle has not provided sufficient facts to allow KeyBank to do anything more than deny the allegations of an illegal agreement.

Thus, Tuttle has again failed to adequately plead his conspiracy claim; accordingly, the conspiracy claim is dismissed.

### 2. Aiding and Abetting Breach of the ICPA

An adequate aiding and abetting claim requires the plaintiff to allege "(1) the existence of an underlying wrong, (2) that there was knowledge of the wrong on the part of the aider and abettor, (3) substantial assistance by the aider and abettor, and (4) damages proximately caused thereby." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1208 (D. Idaho 2013).

Tuttle has failed to demonstrate the second element of aiding and abetting by failing to allege that KeyBank had knowledge of the underlying wrong. Here, the underlying wrong is a violation of the Idaho Consumer Protection Act (ICPA), which prohibits businesses from making misleading, false, or deceptive statements to consumers. Idaho Code § 48-601, *et seq*; Dkt. 25, ¶¶ 75–78. Thus, to satisfy the knowledge element of aiding and abetting, Tuttle must allege that KeyBank had knowledge of Bohnenkamp making false or misleading statements to Tuttle regarding Tuttle's purchase of a boat and trailer.

In his Amended Complaint, Tuttle alleges that KeyBank knowingly "aided and abetted TVM and BWC's misleading, deception, and defrauding of Tuttle" through their facilitation of the Tuttle Loan and providing of the loan proceeds to TVM and/or BWC. Dkt. 25, ¶ 79. However, Tuttle's Amended Complaint provides no allegations of KeyBank having actual knowledge that Bohnenkamp was misleading, deceiving, or defrauding Tuttle. Instead, Tuttle argues that KeyBank was aware that the Tuttle Loan was not used to construct the Tuttle's boat or trailer and that Bohnenkamp was not capable of financing the same. *Id.*, ¶ 37(c). This is insufficient to support Tuttle's aiding and abetting claim because such a claim requires KeyBank to have knowledge of the "wrong" in question, which was

Christopher Bohnenkamp making misleading or deceiving statements to Tuttle in violation of the ICPA.

Although Federal Rule of Civil Procedure Rule 9(b) allows a plaintiff to provide general allegations about a defendant's state of mind, Tuttle still fails to provide any general allegations that KeyBank had knowledge of Bohnenkamp's alleged false or misleading statements to Tuttle. Having failed to satisfy the knowledge element of Tuttle's aiding and abetting claim, this claim is dismissed.

### 3. Violation of RICO Acts and Conspiracy to Violate RICO Acts

Tuttle alleges that KeyBank violated both 18 U.S.C. § 1961 *et seq.* and Idaho Code § 18-7801 *et seq.*, also known as the Racketeer Influence and Corrupt Organization acts ("RICO Acts"). Both federal and state RICO acts require (1) conduct[2] (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Because Tuttle's RICO claims are grounded in fraud, Tuttle must satisfy Rule 9(b) of the Federal Rules Civil Procedure here as well by pleading with particularity each of the elements of a RICO violation. Specifically, the allegation of each RICO element must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Kearns*, 567 F.3d at 1124–25.

First, Tuttle alleges in his Amended Complaint that KeyBank was part of an associated-in-fact enterprise with Bohnenkamp. Dkt. 25, ¶ 92. An "enterprise" is defined

---

[2] Neither party disputes Tuttle's pleading of the RICO conduct element.

as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Tuttle claims that the purpose of the alleged enterprise was to defraud TVM and/or BWC customers seeking to purchase boats and trailers by providing these customers with loans from KeyBank which were purportedly secured by boats and trailers that TVM and/or BWC would never provide. Dkt. 25, ¶ 85. In other words, Tuttle has alleged the existence of a partnership associated-in-fact between KeyBank and Bohnenkamp and has, thus, sufficiently pled the "enterprise" element of his RICO claim.

Second, Tuttle alleges that Jeff and Brooke Miner (collectively "Miner")—a couple of Bohnenkamp customers before Tuttle—had also sought financing for a Bohnenkamp boat through KeyBank (*Id.*, ¶ 20), and that Miner had informed KeyBank that he had not received title to the boat (*Id.*, ¶ 25). As such, Tuttle alleges that KeyBank was involved in a "pattern of racketeering" (*Id.*, ¶ 92) which 18 U.S.C. 1961(5) defines as two or more acts of subsequent racketeering activity. Accordingly, Tuttle has provided sufficient facts to show a pattern by alleging that KeyBank twice funded loans to Bohnenkamp with the knowledge that no collateral, or boat, had been fabricated. *See* Dkt. 25, ¶¶ 21, 35.

However, Tuttle has failed to sufficiently allege KeyBank's involvement with any "racketeering activity." Under 18 U.S.C. § 1961(1), "racketeering activity" includes mail fraud and wire fraud. *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Further, to plea the circumstances of fraud with enough particularity to satisfy Rule 9(b), allegations of fraud must set forth the statement that is false or misleading and an explanation of why it is false or misleading. *See Avakian v. Wells Fargo Bank, N.A.*, 827 Fed. Appx. 765, 766

(9th Cir. 2020) (holding that the plaintiffs could not prove fraud because they failed to show how the defendant's statements were false and misleading).

Here, Tuttle alleges in his Amended Complaint that KeyBank was involved in both mail and wire fraud by using the United States Postal Service and telephone wire communications to mislead, deceive, and defraud Tuttle. Dkt. 25, ¶ 92.

However, Tuttle has failed to demonstrate "how" KeyBank was aware of Bohnenkamp's deception of Tuttle and how KeyBank's communications with Tuttle were false or misleading. The predicate act of mail fraud alleged in a RICO claim requires specific intent to deceive. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991). Thus, to sufficiently allege how KeyBank had executed the alleged racketeering activity, Tuttle must show that KeyBank had specific intent to deceive or defraud Tuttle. More specifically, Tuttle must show how KeyBank used mail and telephone communications to mislead or deceive Tuttle. Tuttle alleges that KeyBank was aware that both Miner and Tuttle had not received boats from Bohnenkamp at the time both loans were funded. Dkt. 25, ¶¶ 21, 35. However, these allegations fail to show that KeyBank was aware of Bohnenkamp's intentions to deceive either customer. More specifically, Tuttle has failed to show how both the loan documentation sent to Tuttle as well as Tuttle's phone conversation with Van Winkle demonstrate that KeyBank was aware of Bohnenkamp's deception or that KeyBank had the specific intent to deceive Tuttle.

As such, Tuttle has failed to sufficiently plead the "racketeering activity" element of his RICO claim with enough particularity to satisfy the heightened pleading standard in Rule 9(b). Consequently, the Court dismisses Tuttle's RICO Acts claims against KeyBank.

*4. Leave to Amend*

Tuttle argues that he should be granted leave to amend any claims that have been insufficiently pleaded. Dkt. 34, at 11. However, the Ninth Circuit has held that "a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

Judge Winmill previously granted Tuttle leave to amend after granting KeyBank's motion to dismiss on the original complaint. Dkt. 24. Nonetheless, Tuttle's Amended Complaint continues to suffer from many of the same problems that led to the dismissal of his original complaint. Mainly, Tuttle has continuously failed to provide a plausible allegation that KeyBank was aware of Bohnenkamp's intentions to mislead, deceive, or defraud Tuttle. As these errors have persisted into Tuttle's Amended Complaint, amending these deficiencies would be futile.

Therefore, the Court dismisses Tuttle's conspiracy claim, aiding and abetting claim, and RICO Acts claim against KeyBank, and denies Tuttle leave to amend.

**B. Bohnenkamp's Motion to Dismiss**

As the Court grants KeyBank's Motion to Dismiss, and as TVM and NJA have been formally dismissed from this suit, Defendants Christopher Bohnenkamp, Rachel Bohnenkamp, and Bohnenkamps Whitewater Customs, Inc. ("Bohnenkamp") are the only remaining defendants.

Although the Bohnenkamp's Motion to Dismiss is still technically pending, Bohnenkamp has failed to obey the Court's order to appoint new counsel. *See* Dkt. 63.

After granting Bohnenkamp's Motion to Withdraw as Counsel in September 2020, the Court required Bohnenkamp to serve a written appearance through a newly appointed attorney within 21 days of the Court's order and gave Bohnenkamp formal notice that failure to do so would be sufficient grounds for entry of judgment against them or dismissal of the action. Dkt. 63, at 2. Bohnenkamp has not appeared or motioned before the Court since 2016—almost seven years ago. Therefore, Bohnenkamp's failure to obey the Court's order is sufficient to DENY Bohnenkamp's Motion to Dismiss.

Accordingly, in March 2023, the Court ordered Tuttle to file a request for a clerk's entry of default judgment against Bohnenkamp pursuant to Fed. R. Civ. P. 55(a) on or before March 31, 2023. Tuttle has failed to file a request for default judgment. Therefore, the Court issues this final warning to Tuttle; that he must take some type of formal action in this case on or before September 11, 2023. Otherwise, Tuttle's case will be dismissed for failure to prosecute pursuant to Idaho Local District Civil Rule 41.1.

## VII. ORDER

The Court HEREBY ORDERS:

1. KeyBank's Motion to Dismiss (Dkt. 28) is **GRANTED**.

2. The Court **DENIES** Tuttle leave to amend his complaint (Dkt. 34) and enters judgment for KeyBank **WITH PREJUDICE**.

3. The Court **DENIES** the Motion to Dismiss (Dkt. 29) brought forth by Defendants Christopher Bohnenkamp, Rachel Bohnenkamp, and Bohnenkamps Whitewater Customs Inc.

4. Plaintiff Tuttle is ordered to take some type of formal action against Defendants

Christopher Bohnenkamp, Rachel Bohnenkamp, and Bohnenkamps Whitewater Customs Inc. consistent with Fed. R. Civ. P. 41 or 55(a) on or before September 11, 2023. Failure to do so will result in the Court dismissing Tuttle's case for failure to prosecute pursuant to Dist. Idaho Loc. Civ. R. 41.1.

DATED: August 7, 2023

_____
David C. Nye
Chief U.S. District Court Judge